# In the United States Court of Federal Claims

| | |
|---|---|
| JOSEPH FERRARI,<br><br>        *Plaintiff,*<br><br> v.<br><br>THE UNITED STATES,<br><br>        *Defendant.* | Case No. 22-885 C<br><br>(Filed: March 28, 2024) |

Sean C. Timmons, Tully Rinckey, PLLC, Austin, TX, for plaintiff.

William P. Rayel, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
Granting the Government's Motion for Judgment on the Administrative Record

**SILFEN,** *Judge*.

  Retired United States Navy commissioned officer, Joseph Ferrari, filed a complaint in this court challenging a decision of the Board for Corrections of Naval Records. The corrections board refused to remove records related to Mr. Ferrari's nonjudicial punishment, and related administrative actions, from his official personnel file and denied him additional promotions and incentive pay. Mr. Ferrari seeks monetary relief for that lost pay. Both Mr. Ferrari and the government move for judgment on the administrative record. Mr. Ferrari asserts that the corrections board's conclusion—that no material error or injustice occurred during his administrative proceedings and, thus, removal of those records was unwarranted—is arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law. He argues that the corrections board should have undone the earlier administrative proceedings because he was deprived of his right to a court-martial proceeding and that the adjudicators in the administrative proceedings made unsupported evidentiary determinations, both admitting evidence that he now asserts is inadmissible and not receiving new evidence that he raised after the nonjudicial punishment proceeding. The record shows that the corrections board's decision is reasonable and supported by substantial evidence. Thus, this court **grants** the government's motion for judgment on the administrative record and **denies** Mr. Ferrari's motion for the same.

1

## I.     Background

This case concerns Mr. Ferrari's application to remove disciplinary records from his official personnel file arising from two incidents. As a result of the corrections board's decision not to remove the records from his file, Mr. Ferrari alleges he was improperly denied pay, benefits, and promotions, and seeks money damages. ECF No. 1 at 10.

### A.     The charges

Before his retirement, Mr. Ferrari was charged with three violations of the Uniform Code of Military Justice (UCMJ) for an alleged sexual assault in 2016 and an additional violation for alcohol-impaired driving the following year.[1] AR 486.[2] To defend against these charges, Mr. Ferrari was provided with military defense counsel and separately retained private civilian counsel. AR 58.

Mr. Ferrari had a preliminary hearing in May 2017. *See* AR 32. There, the military determined that there was probable cause that Mr. Ferrari had committed the sexual-assault-related violations. AR 566-668*; see* AR 507-08. Both Mr. Ferrari's civilian and military defense counsel represented him at that hearing. AR 570. The charges were then referred to the General Court-Martial Convening Authority. AR 321-22, 344.

### B.     Nonjudicial punishment proceeding

In early September 2017, Mr. Ferrari signed a pre-trial agreement. AR 321-23. There, he chose nonjudicial punishment in exchange for the military terminating his court-martial proceeding. *Id*. Mr. Ferrari signed the agreement after consulting with his civilian defense counsel, who also signed the agreement. AR 322.

Mr. Ferrari's nonjudicial punishment proceeding was held the following month. Despite retaining private counsel, Mr. Ferrari elected not to have either that counsel or his military defense counsel attend. AR 486. Mr. Ferrari pleaded guilty to the alcohol-related charge and not guilty to the three sexual-assault-related charges. AR 486-487, 489, 1297-99. The Staff Judge Advocate who prepared the transcript attested that the proceeding was conducted in compliance with the relevant regulations: Mr. Ferrari was informed of the charges against him, his legal rights at the hearings, and his right to appeal the outcome. AR 486-87, 508. Mr. Ferrari also confirmed that he understood that he had been given an opportunity to examine the evidence against him. AR 487.

After the hearing, the presiding officer determined, by a preponderance of the evidence, that Mr. Ferrari was guilty of all charges. The presiding officer issued a punitive letter of reprimand. AR 486, 508, 1289. On the same day, Mr. Ferrari signed a Navy personnel form—a report

---

[1] For the sexual-assault incident, Mr. Ferrari was charged with violating Article 92 (failure to obey an order or regulation), Article 120 (abusive sexual conduct), and Article 133 (conduct unbecoming an officer and a gentlemen) of the UCMJ. AR 486-487. For the alcohol-related incident, Mr. Ferrari was charged with violating Article 111 (drunken or reckless operation of a vehicle, aircraft, or vessel). AR 486.

[2] The administrative record is available at ECF No. 9 through ECF No. 9-3.

and disposition of offenses sheet (NAVPERS 1626/27)—acknowledging that he had been informed of the accusations against him. AR 1297-98. The section of that form stating that he had a right to demand trial by court-martial was marked "N/A" (not applicable). AR 1298. By signing the form, Mr. Ferrari also acknowledged the outcome of the proceeding and verified that he had been made aware of his right to appeal (*id.*), a right he then exercised. AR 1306-08.

On appeal, Mr. Ferrari argued that the earlier determination had been unjust and one-sided. *See* AR 1306-1308. He did not argue that he was denied his right to a court-martial trial. *See id.*

The appeal was denied, and Mr. Ferrari's nonjudicial punishment became final. AR 1306-08. The commander hearing the appeal determined that Mr. Ferrari had been "afforded all of [his] rights" in the nonjudicial punishment hearing, that the findings of guilt were supported by a preponderance of evidence, and that the presiding officer had not abused his discretion. *Id*. The commander thus recommended that Mr. Ferrari be detached (removed from his job) for cause and made ineligible for promotion, among other consequences. AR 1287, 1289-90, 1295-96.

Objecting to this decision, Mr. Ferrari reasserted his prior arguments. He "readily admitted to [his] misconduct with respect to the [alcohol-related] offense" and did not argue that he was denied an opportunity to be tried by court-martial. AR 1291-93.

### C. Board of Inquiry proceeding

On Mr. Ferrari's request, a Board of Inquiry convened to examine the commander's recommendation of nonjudicial punishment. AR 726-27. The inquiry board agreed that Mr. Ferrari should be separated from the Navy, but solely on the basis that he was guilty of the alcohol-related charge. AR 726. In contrast to the nonjudicial punishment decision, the inquiry board found that there was insufficient evidence to support the sexual-assault-related charges and found Mr. Ferrari not guilty of those charges. AR 726-27.

The Assistant Secretary of the Navy disagreed with the inquiry board's choice of punishment and allowed Mr. Ferrari to remain in the Navy. AR 728. That decision was added to Mr. Ferrari's official file, alongside records of the prior proceedings. *Id.* Mr. Ferrari continued to challenge his administrative disciplinary actions. AR 730-733, 736-37, 739-741, 744-45.

### D. Initial Board for Corrections of Naval Records decision

Seeking to have the records from all prior administrative actions removed from his official military personnel file, Mr. Ferrari then petitioned the Board of Corrections of Naval Records. AR 349, 355-471.

In his petition, Mr. Ferrari argued that both the nonjudicial punishment decision and the inquiry board's decision should be nullified. Mr. Ferrari argued that (1) he had been denied due process and (2) there was a lack of sufficient credible evidence to substantiate the outcomes. AR 355-56, 363-67. On the sexual-assault-related charges, the military had relied on testimony from the complainant. Mr. Ferrari argued that the nonjudicial punishment decision was improper because the presiding officer disregarded inconsistencies in the complainant's statements, whereas the inquiry board "got it right" in finding that there was insufficient evidence of misconduct. AR 363-67, 370. On the alcohol-related charge, the military had relied on testimony from Mr. Ferrari's

commanding officer and the results of a breathalyzer test. It had not relied on the results of a blood-alcohol test that was taken at the hospital hours after the incident. Mr. Ferrari asserted that both decisions improperly relied on the breathalyzer results, which should have been deemed inadmissible, and that there was "no other evidence presented to otherwise substantiate this offense." AR 356-57, 361-63, 369 (the results from the breathalyzer were "high"). He also argued that the results from the blood-alcohol test—showing levels within the legal limit—should have been included as evidence. AR 362, 369 (this test revealed a blood-alcohol-concentration of 0.04%). According to Mr. Ferrari and his counsel, because they did not discover the test results in his medical records until after the inquiry board process, he had mistakenly pleaded guilty and was unable to fully defend himself against the alcohol-related charge in the earlier proceedings. AR 357, 361-62, 369-71.

While awaiting the corrections board's decision, the Assistant Legal Counsel for Commander Navy Personnel Command issued an advisory opinion recommending that the corrections board deny Mr. Ferrari's application because he failed to present sufficient evidence to overcome the presumption of regularity for official naval actions. AR 344-47. The advisory opinion stated that, even without the initial breathalyzer test results, there was adequate, independent evidence—including others' testimony—that Mr. Ferrari had been under the influence. AR 345-46. The advisory opinion also stated that, while the two proceedings reached opposite conclusions on the sexual-assault-related charges, the two forums are distinct, and the decision of one does not require expunging the record of the other. AR 345.

Mr. Ferrari responded to the advisory opinion, arguing for the first time that the opportunity to pursue trial by court-martial was "stolen from him." AR 350. He repeated his allegations of insufficient and improper evidence and procedural deficiencies. AR 350-54.

The corrections board denied Mr. Ferrari's application, concluding that he had not established probable material error or injustice. AR 331-343. Substantially agreeing with the advisory opinion, the corrections board concluded that all administrative actions had been properly conducted because (1) Mr. Ferrari's due process rights had not been violated, as he was represented by counsel, voluntarily entered into a pre-trial agreement, and pleaded guilty to the alcohol-related charge; (2) any harm to Mr. Ferrari from not having access to the initial breathalyzer test was immaterial because there was sufficient, independent evidence to support a finding of guilt; and (3) the inquiry board's decision did not undermine the nonjudicial punishment decision finding him guilty for the sexual-assault-related offenses. AR 333-36.

### E.   Board for Corrections of Naval Records reconsideration

Mr. Ferrari petitioned the corrections board for reconsideration. AR 49-71. He argued that insufficient evidence supported the alcohol-related offense. He also introduced new evidence—text messages—that he alleged provided an alibi for the sexual-assault-related charges. AR 50, 54.

On the alcohol-related offense, Mr. Ferrari argued that (1) the government improperly used a breathalyzer device and failed to read him his UCMJ Article 31(b) rights when questioning him, violating his due process rights; (2) the government lacked sufficient evidence of intoxication because the results from the initial breathalyzer test were inadmissible, and no other evidence supported the charge; and (3) he would not have pleaded guilty to the alcohol-related charge had he

4

known earlier that the breathalyzer test was inadmissible and had he seen the results from the hospital's blood-alcohol test. *See* AR 54, 68-70. Mr. Ferrari asserted that he was entitled to change his plea to "not guilty" on the alcohol-related charge. AR 54.

On the sexual-assault charges, Mr. Ferrari argued that the text messages accounted for his activity throughout the entire alleged incident, and had this information been available during his nonjudicial punishment proceeding, all three sexual-assault-related charges "should and would have been dismissed." AR 54, 63-67.

Mr. Ferrari also argued that the earlier proceedings "unjustly" denied him the opportunity to demand trial by court-martial. For the first time, Mr. Ferrari argued that his military-appointed defense counsel, his private counsel, and others improperly informed him that he was subject to the "vessel exception rule." AR 54. Under the vessel exception rule, if a Navy service member is "attached to or embarked on a vessel," he may not choose to have a court-martial trial and instead must accept nonjudicial punishment. 10 U.S.C. § 815(a). Mr. Ferrari argued that he was not at the time attached to or embarked on a vessel, so the vessel exception rule did not apply to him. AR 62. But, he argued, he was forced to accept nonjudicial punishment anyway. AR 61-62. He added that he entered into the pre-trial agreement only because he was concerned about, and wanted to avoid, being tried twice, first in the nonjudicial punishment proceeding and then in a court-martial trial. *Id*. Mr. Ferrari raised these arguments for the first time in his petition for reconsideration, stating that he was "unaware that [he] could have refused" nonjudicial punishment until then. AR 62.

The Navy Personnel Command, Office of Legal Counsel issued an advisory opinion recommending that the corrections board deny Mr. Ferrari's request for reconsideration. AR 43-44. The opinion stated that Mr. Ferrari's request was untimely and that he had not overcome the presumption of regularity that attaches to military actions. *Id*. The opinion also stated that the additional text message evidence was insufficient to prove that a material error or injustice had occurred in the nonjudicial punishment proceeding. *Id.*

The Office of the Judge Advocate General for Criminal Law also issued an advisory opinion recommending that the corrections board deny the appeal. AR 27-37. This opinion stated that (1) the vessel exception argument was untimely and should not be reconsidered; (2) Mr. Ferrari voluntarily accepted nonjudicial punishment, rendering the vessel exception argument moot regardless of its merit; (3) the additional text message evidence was both immaterial and untimely; and (4) the corrections board had already determined that Mr. Ferrari was lawfully charged with the alcohol-related offense during the nonjudicial punishment proceeding, and—because he did not present any new arguments—there was no basis for reconsideration. AR 27, 30-36.

Mr. Ferrari responded to the Navy Personnel Command opinion, arguing that the Navy had not obtained a valid waiver of his right to trial by court-martial. AR 38-41. He argued that the "N/A" notation on the form showed that he was not given a choice to reject nonjudicial punishment. *Id*. Thus, he argued, his waiver was not voluntary, knowing, or intelligent. *Id*. Mr. Ferrari responded to the Judge Advocate General opinion with the same arguments. AR 16-26.

The corrections board then issued its final decision denying Mr. Ferrari's second application, concluding that his claims lacked merit and that there was not sufficient evidence of error or

injustice to warrant relief. AR 1-15. Agreeing with the corrections board's earlier decision and the latest advisory opinions, it held,

1. The vessel exception rule was immaterial to the case because Mr. Ferrari elected nonjudicial punishment in the pre-trial agreement. AR 3. Even if he did have the right to pursue trial by court-martial, he was never deprived of that right because he voluntarily relinquished it. *Id.* Mr. Ferrari's decision to enter into the pre-trial agreement was voluntary, knowing, and intelligent, as he had competent legal counsel and failed to present any evidence that anyone coerced him into signing the agreement. *Id.*

2. The additional text message evidence was neither material enough nor new enough to prove that the sexual-assault incident did not take place or that the complainant was lying. AR 3-4. Mr. Ferrari relied on the text messages only for the timing of the alleged incident, and timing was not an essential element of the charge. AR 4. The text messages could be used to evaluate the complainant's credibility, but the nonjudicial officer reviewed her credibility, including her recollection of the timing of the incident, which she admitted was not exact. Thus, those text messages would not have changed the analysis of the complainant's testimony. AR 4, 7.

3. Mr. Ferrari was properly charged with operating a vehicle while intoxicated. There was sufficient independent, circumstantial evidence to support the charge, separate from the breathalyzer test results. AR 4.

The corrections board therefore refused to remove from Mr. Ferrari's official personnel file the records from his nonjudicial punishment proceeding, inquiry board proceeding, and all related administrative actions. AR 4-6.

### F. Court of Federal Claims suit

Mr. Ferrari then filed a complaint in this court under the Military Pay Act, 37 U.S.C. §§ 201-212, 301(c), the disability retirement pay statute, 10 U.S.C. § 1204, *et seq.*, and the corrections board statute, 10 U.S.C. §§ 1552, 1558, seeking reimbursement of pay denied to him because of the corrections board's decision not to modify his personnel file. ECF No. 1 at 1-2, 9-10. He argues that, if he had been given a trial by court-martial instead of nonjudicial punishment, or if the corrections board had not committed evidentiary errors, he might not have been found guilty of the offenses and would then have been promoted and would have received additional incentive pay. *See id.* at 8-11.

## II. Discussion

### A. Procedural posture

Mr. Ferrari moves for judgment on the administrative record. ECF No. 12; *see* RCFC 52.1. He argues that the corrections board wrongly concluded that (1) the vessel exception rule applied; (2) in waiving his right to trial by court-martial in the pre-trial agreement, Mr. Ferrari acted voluntarily, knowingly, or intelligently; (3) the alcohol-related decision was based on admissible evidence; and (4) nonjudicial punishment was appropriate in spite of evidence that undermined the sexual-assault complainant's credibility. *See* ECF No. 12 at 13-17; *see also* ECF No. 18.

6

The government opposes and requests judgment in its favor. ECF No. 17; ECF No. 26. The government argues that substantial evidence supports the corrections board's decisions and that (1) the vessel exception rule was immaterial because Mr. Ferrari signed a valid pre-trial agreement accepting nonjudicial punishment instead of trial by court-martial; (2) Mr. Ferrari voluntarily and knowingly entered into that agreement; and (3) the evidence Mr. Ferrari presented at the prior proceedings, and since, does not undermine those decisions, particularly because independent evidence supported the alcohol-related decision, and the new text message evidence did not undermine the sexual-assault-related decisions. *See* ECF No. 17 at 11-17; *see also* ECF No. 26.

### B.   Legal standards

On a rule 52.1 motion for judgment on the administrative record, this court must determine whether, given all disputed and undisputed facts, the evidence in the record establishes that the moving party has met its burden of proof. *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018). In a military pay case, the court is reviewing an administrative action (in this case, the corrections board's decision), and the court determines whether that action is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998).

The court owes "substantial deference" to the corrections board; it "does not sit as a 'super correction board.'" *Chapman v. United States*, 92 Fed. Cl. 570, 577 (2010), *aff'd*, 427 F. App'x 897 (Fed. Cir. 2011) (quoting *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)). It is not this court's role to "reweigh" the evidence. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Thus, as long as the corrections board "considered the relevant evidence and came to a reasonable conclusion, this court will not disturb" its decision. *Riser v. United States*, 97 Fed. Cl. 679, 683-84 (2011).

The court reviews factual findings for substantial evidence. *Heisig*, 719 F.2d at 1157. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). It may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent" the court from concluding that substantial evidence supports the board's decision. *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)).

Mr. Ferrari bears the burden of showing by "cogent and clearly convincing evidence" that the corrections board's actions were arbitrary and capricious. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). It is also his burden to overcome the "presumption of regularity that attaches to all administrative decisions," as well as the "the strong, but rebuttable, presumption that administrators of the military … discharge their duties correctly, lawfully, and in good faith." *Chapman*, 92 Fed. Cl. at 577 (quoting *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003) and *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997)). Mr. Ferrari must point out support for his positions in the administrative record to prevail on a motion for judgment on that record. *See Facility Healthcare Servs., Inc. v. United States*, 158 Fed. Cl. 254, 257-58 (2022).

7

        **C.**        **Substantial evidence supports the corrections board's conclusion that Mr. Ferrari was not deprived of his right to a court-martial proceeding**

      Substantial evidence supports the corrections board's conclusion that Mr. Ferrari was given the option to pursue trial by court-martial and chose not to by entering into a pre-trial agreement. Mr. Ferrari has not shown that the agreement was invalid or that he tried to void it.

        **1.**        **Substantial evidence supports the corrections board's conclusion that Mr. Ferrari voluntarily, knowingly, and intelligently elected nonjudicial punishment, terminating his court-martial proceeding**

      Before his nonjudicial punishment proceeding, Mr. Ferrari and his counsel both signed a pre-trial agreement in which Mr. Ferrari "accept[ed] disposition of nonjudicial punishment for all alleged misconduct … [i]n exchange for" the General Court-Martial Convening Authority's "withdraw[al] and dismiss[al] without prejudice [of] all offenses on the referred charges sheet for which [he had] been arraigned." AR 321-22. At that time, the court-martial proceeding had already begun. *See* AR 58, 321. As the corrections board explained, by signing the pre-trial agreement, Mr. Ferrari "elected to accept" nonjudicial punishment instead and therefore was "never deprived of [his] right to a court-martial" proceeding. AR 3.

      Mr. Ferrari argues that that waiver of his right to trial by court-martial was not made voluntarily, knowingly, and intelligently. ECF No. 12 at 14-16 (quoting *United States v. Booker*, 5 M.J. 238, 243 & n.20 (C.M.A. 1977)); *see also Fairchild v. Lehman*, 814 F.2d 1555, 1560 (Fed. Cir. 1987). He argues that he was not notified of his right to demand trial by court-martial and that he was not informed of all relevant evidence and admissibility considerations before waiving the right.

      First, Mr. Ferrari argues that he was not properly notified of his right to demand trial by court-martial, so his decision to give up that right was unintelligent. *See* ECF No. 12 at 15-16; ECF No. 18 at 7. Mr. Ferrari alleges that a few days after he signed the pre-trial agreement, he was "erroneously informed that he could not refuse Article 15, UCMJ [that is, nonjudicial punishment], proceedings and demand trial by court martial" and that this information prompted him to sign. ECF No. 12 at 9, *see also id.* at 15-16. Mr. Ferrari cites only the report and disposition form, which has a section stating that he acknowledges his right to demand trial by court-martial. AR 1298. The signature boxes under this section are marked "N/A." *Id.* According to Mr. Ferrari, this indicates that the form effectively took away his rights or improperly informed him that he was obligated to accept nonjudicial punishment. *See* ECF No. 12 at 15-16; AR 18-19.

      Second, Mr. Ferrari argues that he was not informed of all relevant evidence and admissibility considerations before waiving his rights. *See* ECF No. 18 at 7-8. He alleges that he was not given the results of the hospital's blood-alcohol test, nor was he told that the results from the earlier breathalyzer test were inadmissible in his administrative proceedings. *Id*. "Had he been privy to this information," he argues, he "would not have pleaded guilty" to the alcohol related charge. *Id.* at 8.

      The corrections board's decision, and the advisory opinion it incorporates, considered Mr. Ferrari's arguments, and the relevant evidence, and reasonably determined that Mr. Ferrari entered

8

into a pre-trial agreement and thereby voluntarily, knowingly, and intelligently chose nonjudicial punishment instead of court-martial proceeding. The record supports the board's findings. AR 3, 13-15.

On the report and disposition form, as the corrections board explained, the "N/A" designation did not affect Mr. Ferrari's knowledge when waiving his right to a court-martial proceeding because it was presented to Mr. Ferrari after he had entered into the pre-trial agreement. *Compare* AR 1297-98 (signature date of Oct. 2, 2017) *with* AR 321-22 (signature date of Sept. 7, 2017); *see also* AR 3-4 (corrections board decision discussing his voluntary acceptance of nonjudicial punishment in lieu of court-martial trial by signing pre-trial agreement), 31-33 (advisory opinion discussing the same). It makes sense that Mr. Ferrari's right to a court-martial trial was "not applicable" at that point because he had already signed the pre-trial agreement expressly waiving the right. *See* AR 32 (advisory opinion explaining that, even if his "counsel advised him that he could not refuse [nonjudicial punishment], this advice was not improper given the terms of the [pre-trial agreement]."). Contrary to Mr. Ferrari's contention that the corrections board "wholly fail[ed]" to consider this issue (ECF No. 12 at 16), the corrections board reviewed the relevant evidence in the record and reasonably concluded that Mr. Ferrari was not misled or coerced into nonjudicial punishment. AR 3-4, 9-10, 13-15 (corrections board decision concurring with the assessment of the advisory opinion); *see* AR 31-32 (advisory opinion assessment stating that there was no evidence that he was coerced into signing the pre-trial agreement).

Mr. Ferrari's due process rights were not violated. The due process requirement is satisfied when the "accused ha[s] an opportunity to consult with counsel prior to electing nonjudicial punishment." *Fairchild*, 814 F.2d at 1559; *Booker*, 5 M.J. at 243. Mr. Ferrari had that opportunity; he was provided with military counsel, and he retained his own civil defense counsel. *See* AR 58, 142, 321-22, 360, 570; ECF No. 12 at 8. He concedes that he consulted with counsel before signing the pre-trial agreement. ECF No. 18 at 1. The agreement itself states that it was signed "after consultation with … civilian defense counsel," and Mr. Ferrari's counsel signed the agreement alongside him. AR 321-22; *see* AR 3 (corrections board noting that Mr. Ferrari was represented by counsel when he waived the right to a court-martial trial). Although [i]gnorance of rights and procedural rules may sometimes be forgiven a pro se claimant" it is a "lame excuse" when a party is represented, even if counsel is not present at every point of the proceeding. *Cunningham v. United States*, 212 Ct. Cl. 451, 456 (1977).

The corrections board reasonably concluded that Mr. Ferrari's representation was both adequate and competent (AR 3 (corrections board decision reviewing the evidence and agreeing with the advisory opinion); *see* AR 31-32 (advisory opinion evaluating the adequacy of Mr. Ferrari's representation)), and Mr. Ferrari has neither argued that his counsel was ineffective nor presented evidence to overcome the presumption of competence (*see* ECF No. 12 at 15-16; ECF No. 18 at 7-8). And even though counsel was not present at the nonjudicial punishment proceeding, Mr. Ferrari voluntarily chose to waive representation for that proceeding. AR 486; *see also* AR 321-23, 1303-05. The absence of counsel at that one proceeding does not render his guilty pleas unintelligent. *See Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 694 (E.D. Va. 2015), *aff'd*, 685 F. App'x 184 (4th Cir. 2017).

The case law supports the corrections board's finding. "The competence of counsel is presumed." To overcome that presumption, the accused must point out specific errors by that counsel

"which were unreasonable under prevailing professional norms." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citing *United States v. Chronic*, 466 U.S. 648 (1984)). A decision to elect nonjudicial punishment is intelligent as long as counsel's advice "is reasonably competent." *Varn v. United States*, 13 Cl. Ct. 391, 396 (1987). "[E]ven unprofessional errors by counsel do not justify setting aside a [proceeding] unless the deficient conduct 'actually had an adverse effect on the defense.'" *Scott*, 24 M.J. at 188 (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

     Mr. Ferrari understandably relies on *Fairchild* to support his position that his choice of forum was not made with all relevant information. In *Fairchild*, the Federal Circuit determined that Mr. Fairchild, a servicemember, had unintelligently waived a court-martial trial, and opted for nonjudicial punishment instead, where his military counsel had misinformed him about the consequences of electing nonjudicial punishment, and he had relied on that information to make his decision. 814 F.2d at 1559-60. Mr. Fairchild's military defense counsel told him, wrongly, that "if he waived his right to go to trial he could not be subject to a less than honorable administrative discharge." *Fairchild v. Lehman*, 609 F. Supp. 287, 290 (E.D. Va. 1985); *see Fairchild*, 814 F.2d at 1560 (explaining that the military defense counsel's statement was wrong).

     Mr. Ferrari's situation is different in important ways. Mr. Ferrari at times argues that his counsel failed to tell him that he could refuse nonjudicial punishment. ECF No. 1 at 11 [¶74]; ECF No. 12 at 15. At other times he argues that his counsel affirmatively told him he could not demand trial by court-martial. ECF No. 1 at 6 [¶35]; ECF No. 12 at 9. He cites no evidence in support of either. *Cf. Fairchild*, 814 F.2d at 1558 (relying on a sworn affidavit). Nor does he allege, as the plaintiff in *Fairchild* alleged (814 F.2d at 1560), that his counsel misinformed him about the consequences of either nonjudicial punishment or a court-martial trial. In fact, the transcript from the nonjudicial punishment proceeding makes clear that Mr. Ferrari was told about and understood the consequences of each option. *See, e.g.*, AR 490, 499, 507-508 (acknowledging the consequences of court-martial trial versus nonjudicial punishment).

     Furthermore, the alleged misstatements were not even necessarily wrong. After he picked nonjudicial punishment and signed the agreement waiving a right to a court-martial proceeding, it would not have been wrong for his counsel to tell him that he made an election, while also letting him know (as the agreement makes clear) that he could void his election. AR 321 (pre-trial agreement, where Mr. Ferrari certifies that "I expressly understand that this Agreement will become null and void in the event that I fail to accept disposition at nonjudicial punishment" and that "I understand if this Agreement becomes null and void that the convening authority may forward the previously charged offenses … to a General Court-Martial Convening Authority … for disposition."). Mr. Ferrari understood, and signed the agreement indicating his understanding, that he was choosing nonjudicial punishment and also that he could change his mind and void the agreement, thus electing a court-martial proceeding instead. *Id.* Nothing in *Fairchild* requires more than that. *See Colon v. United States*, 32 Fed. Cl. 481, 494-95 (1994) (distinguishing *Fairchild* because the record indicated that the plaintiff was not misinformed or given erroneous advice); *Varn*, 13 Cl. Ct. at 396 n. 8 (same); *Luxama v. McHugh*, No. 15-CV-1586 (CMH/JFA), 2018 WL 3468365, at *6 (E.D. Va. July 16, 2018), *aff'd*, 755 F. App'x 334 (4th Cir. 2019) (finding that reliance on *Fairchild* and other cases was misplaced because in those cases it was established that the advice given was erroneous).

Mr. Ferrari's argument that his waiver was unintelligent, because he did not have access to certain evidence or know about certain evidentiary rules, is also misplaced. Mr. Ferrari's attorneys were "intimately familiar with his circumstances and the facts of the case and were able to provide him informed and competent advice regarding his decision" to waive his right to court-martial trial. *See* AR 31-32 (advisory opinion). Even if his counsel did not acquire the blood-alcohol test record or tell him that certain evidence was inadmissible—an allegation for which Mr. Ferrari does not provide any support in the record—no due process violation occurs when the accused or his counsel know before a hearing or trial that exculpatory information exists and make no effort to get it. *U. S. v. Lucas*, 5 M.J. 167 (C.M.A. 1978) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

And the fact that the certain evidence would have been inadmissible in a court-martial proceeding also does not undermine the nonjudicial punishment or inquiry board proceedings. Mr. Ferrari was informed of his rights and given an opportunity to review the military's documentary evidence. AR 335, 487, 1303-05. Mr. Ferrari "cannot complain [that he] was misled about the extent of [his] rights in [the nonjudicial punishment proceeding] because [he was] advised by counsel prior to making [his] choice" to undergo that proceeding. *Dumas v. United States*, 223 Ct. Cl. 465, 479 (1980); *see Varn*, 13 Cl. Ct. at 396 (relying on *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970), and explaining that a counsel's failure to inform a plaintiff that admissions made while using a polygraph were inadmissible in a court-martial proceeding was not sufficient to undo his choice to elect nonjudicial punishment).

Mr. Ferrari argues, without factual support, that it was the government, not his counsel, that withheld evidence from him. *See* ECF No 12 at 16-17; ECF No. 18 at 7-8, 9. But, as discussed more below, Mr. Ferrari could have gotten the blood-alcohol results himself, so it was not the government's obligation to provide those results. *See infra* § II.D.1; *United States v. Ellis*, 77 M.J. 671, 676 (A. Ct. Crim. App. 2018) (citing *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997), and explaining that there is no obligation to provide exculpatory evidence that is discoverable via due diligence). Mr. Ferrari does not explain why he did not review his own medical records until after the inquiry board proceeding. And contrary to Mr. Ferrari's contentions, the corrections board considered this issue. AR 3, 4.

Mr. Ferrari repeatedly consented to a nonjudicial punishment proceeding and did not challenge the voluntariness of that decision until after he lost. *See* AR 350, 731-32, 740-41, 36; *see also* AR 332. Mr. Ferrari forfeited the right to object. When a party fails to raise "constitutional claims of ineffective assistance of counsel and absence of capacity to enter a voluntary and knowing guilty plea," the party waives them unless the record "provide[s] cause to doubt the veracity of the trial process." *Longval v. United States*, 41 Fed. Cl. 291, 295 & n.5 (1998) (relying on *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990)); *see generally Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1161-66 (Fed. Cir. 2020) (explaining that a party who affirmatively chooses adjudication in one forum over another cannot later challenge the constitutionality of the structure of the chosen forum). Mr. Ferrari had many opportunities to object to the nonjudicial punishment proceeding. Instead, he waited to object until after receiving an unfavorable outcome. It was too late. *See Snakenberg v. United States*, 15 Cl. Ct. 809, 813 (1988); *Ciena Corp.*, 958 F.3d at 1159 ("Ciena was content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it. Under those circumstances, we find that Ciena has forfeited its Appointments Clause challenge."); *see also Waller v. United States*, 198 Ct. Cl. 908, 815 (1972); *Cochran v. United States*, 1 Cl. Ct. 759, 765 (1983) (explaining that it would be unreasonable "to allow an

11

accused to waive trial by a court in favor of minor punishment by his commanding officer and then after the punishment is imposed to repudiate his election and obtain a *de novo* trial by another court").

### 2. The vessel exception rule does not change the analysis

Under the vessel exception rule, a Navy service member who is "attached to or embarked on a vessel" must accept nonjudicial punishment instead of a court-martial proceeding. 10 U.S.C. § 815(a). Mr. Ferrari alleges that he was treated as though the exception applied to him, but in fact, he was not attached to a vessel at the time of his nonjudicial punishment and therefore was improperly foreclosed from having a court-martial trial. ECF No. 12 at 14-16. Mr. Ferrari argues that the "N/A" designation in the report and disposition form "unequivocally indicated that the vessel exception rule applied" to his case. *See* ECF No. 12 at 15-16; ECF No. 18 at 9; AR 18. In his opening brief, Mr. Ferrari argues that that the report and disposition form "voided" the pre-trial agreement. By voiding the agreement, he asserts, the choice to pursue nonjudicial punishment went from his choice (in the agreement) to the military's decision (on the report and disposition form). *See* ECF No. 12 at 15-16; AR 18; *see also* AR 16-26 (Mr. Ferrari's response to the final advisory opinion). In his reply brief, Mr. Ferrari asserts that "by utilizing a form applying the vessel exception rule" he was deprived "of his right to void the [pre-trial agreement] and move forward with [a] court-martial" proceeding. ECF No. 18 at 9. He adds that because the burden of proof in court-martial proceedings is higher than that in nonjudicial punishment proceedings, the vessel exception rule had a material effect on his case. *Id.*

As a threshold matter, the corrections board was not obligated to review and decide whether the vessel exception rule applied because Mr. Ferrari raised this argument too late. *See* AR 3, 13. As the advisory opinion, incorporated by the corrections board, explained, a service member has three years from when he could have discovered an error by the Navy to raise that error. AR 29-30 (citing 10 U.S.C. § 1552(b) ("No correction [of military records] may be made . . . unless the claimant … files a request for the correction within three years after discovering the error or injustice.").

Mr. Ferrari raised a vessel exception claim for the first time after the three-year deadline passed. AR 27, 29-33; *see* AR 43. The alleged error or injustice was discoverable at the time of Mr. Ferrari's nonjudicial punishment on October 2, 2017 (AR 486-508), and he did not raise the argument until February 23, 2021, in his petition for reconsideration. AR 49-71. Thus, the vessel exception rule argument is time barred. *See Kendall v. Army Bd. for Correction of Mil. Recs.*, 996 F.2d 362, 367 (D.C. Cir. 1993) (holding that actual notice was not required where the plaintiff with reasonable diligence should have discovered the error and did not raise the argument in his first appearance before the corrections board); *Ponds v. United States*, 22 F.3d 1106 (table) at *2, 5 (Fed. Cir. 1994) (holding that the plaintiff "knew or should have known of any alleged inaccuracies in his fitness reports within a reasonable period of signing them"). Mr. Ferrari did not ask the corrections board to consider waiving the limitation period "in the interest of justice," as is permitted under 10 U.S.C. § 1552(b), nor does he argue that there were circumstances that prevented him from filing and making this argument sooner. *See Miller v. United States*, 29 Fed. Cl. 107, 110 (1993).

Even so, the corrections board considered Mr. Ferrari's arguments and the relevant evidence and reasonably determined that any invocation of the vessel exception rule did not wrongfully deprive Mr. Ferrari of his right to trial by court-martial. AR 3 (corrections board's conclusion incorporating the advisory opinion's analysis); *see* AR 31-32 (advisory opinion's analysis).

Mr. Ferrari signed the pre-trial agreement before he was presented with the report and disposition form. *Compare* AR 321-23 (pre-trial agreement signed by Mr. Ferrari on September 7, 2017) *with* AR 1297-98 (report and disposition form signed by Mr. Ferrari on October 2, 2017). By the time he signed the report and disposition form, he had already waived any right to a court-martial proceeding. *See* AR 32. Mr. Ferrari provides no evidence or law to support the argument that later events can render his voluntary agreement involuntary. *See* ECF No. 17 at 14. He does not overcome the presumption that his decision to choose nonjudicial punishment was voluntary. *See Flowers v. United States*, 80 Fed. Cl. 201, 219 (2008), *aff'd*, 321 F. App'x 928 (Fed. Cir. 2008); *Nicely v. United States*, 147 Fed. Cl. 727, 747 (2020), *aff'd*, 23 F.4th 1364 (Fed. Cir. 2022).

"A bare allegation of coercion is not sufficient to set aside" Mr. Ferrari's pre-trial agreement, nor can it transform a voluntary decision into a coerced one after the fact. *Tiburzi v. Dep't of Just.*, 269 F.3d 1346, 1355 (Fed. Cir. 2001) (citing *Asberry v. U.S. Postal Serv.*, 692 F.2d 1378, 1380 (Fed. Cir. 1982)); *cf. Brown v. United States,* 30 Fed. Cl. 227, 229-30 (1993), *aff'd*, 26 F.3d 139 (Fed. Cir. 1994) (a choice to voluntarily resign from service rather be subjected to court-martial trial was not found to be coercive after the fact); *Moody v. United States*, 58 Fed. Cl. 522, 525 (2003) (choosing between resignation and court-martial trial is a difficult choice, but it is not an involuntary one). Thus, the "N/A" notation on the form can be reasonably read, as the corrections board read it, to reflect that Mr. Ferrari had already voluntarily accepted nonjudicial punishment, irrespective of the vessel exception rule. *See* AR 3, 14-15. The form does not prove that the vessel exception rule was relevant to Mr. Ferrari's choice to accept nonjudicial punishment or even that he was told the vessel exception rule applied to him.

Mr. Ferrari next argues that he either voided or tried to void the pre-trial agreement, but because of the vessel exception rule, could not. ECF No. 12 at 15-16; ECF No. 18 at 9. But the terms of the pre-trial agreement expressly allow for it to be voided and specify that, if it is voided, "the convening authority may forward the previously charged offenses ... for disposition" in a court-martial proceeding. AR 321; *see* AR 32 (advisory opinion noting that Mr. Ferrari "could have voided the [pre-trial agreement] at any time"). If he had voided the agreement, his right to court-martial could have been restored. AR 32 (advisory opinion explaining that if Mr. Ferrari voided his pre-trial agreement, the convening authority "would not have withdrawn the charges from the General Court-Martial and [he] could have proceeded to trial"). Mr. Ferrari provided no evidence that he either voided or tried to void the pre-trial agreement. *See* AR 3 ("substantially concurring" with the advisory opinion on Mr. Ferrari's additional arguments regarding his "right to demand trial by court-martial, the vessel exception rule, and the [pre-trial agreement" and finding "insufficient evidence of an error or injustice"), 32 (advisory opinion noting that Mr. Ferrari did not void his pre-trial agreement); *see generally* AR 486-508 (absence of objection during nonjudicial punishment proceeding). Nor does he cite any now. *See* ECF No. 18 at 2, 5-6, 9. In fact, Mr. Ferrari stated during his nonjudicial punishment proceeding that he had "never had stress and anxiety like" he felt knowing the potential consequences of a court-martial proceeding, indicating that he had concerns about the idea of a court-martial proceeding. AR 490.

Finally, while Mr. Ferrari is correct that the burden of proof is higher in a court-martial proceeding, which could have had a material effect on the outcome of his case (ECF No. 18 at 9), he voluntarily waived a court-martial proceeding and its accompanying burden of proof. And that choice was not illogical; the consequences of a guilty verdict from a court-martial proceeding are greater than those from nonjudicial punishment. *Compare e.g.*, Manual for Courts-Martial, United States (MCM) Part IV §45.c (2016) (maximum punishment for the Article 120, abusive sexual contact, is "dishonorable discharge, forfeiture of all pay and allowances, and confinement for 7 years") *with* MCM Part V § 5.b (2016) (maximum authorized punishments for nonjudicial punishment include admonition, reprimand, short-term suspension from duty, forfeiture of one month's pay, and short-term arrest in quarters).

In sum, the corrections board reasonably found that Mr. Ferrari's argument, that he was unlawfully required to accept nonjudicial punishment because of the vessel exception rule, was time barred. AR 29. Nonetheless, the corrections board considered Mr. Ferrari's vessel exception rule arguments and reasonably determined that the rule was immaterial to the case. AR 32. Mr. Ferrari chose to relinquish his right to a court-martial proceeding and was not prevented from voiding his pre-trial agreement. *Id*.

### D. The nonjudicial punishment and inquiry board proceedings were lawfully conducted

Substantial evidence supports the corrections board's conclusion that Mr. Ferrari was guilty of all four charges in the nonjudicial punishment proceeding and guilty of the one alcohol-related charge in the inquiry board proceeding, and that the new evidence presented since those hearings did not reveal a material error or injustice that would warrant relief. Mr. Ferrari has not shown that his guilty plea was invalid, that either decision materially relied on inadmissible evidence, or that the new text message evidence provided an alibi that would nullify his nonjudicial punishment.

#### 1. Mr. Ferrari was lawfully found guilty of the alcohol-related offense

Mr. Ferrari argues that he mistakenly pleaded guilty to the alcohol-related charge, and that both the nonjudicial punishment and inquiry board's verdicts were therefore legally deficient. ECF No. 12 at 16-17; ECF No. 18 at 7-8. Because he "was not granted access" to the results from the blood-alcohol test collected at the hospital, which showed a level below the legal limit, until after he had pleaded guilty in the nonjudicial punishment proceeding, he believes he was misled when he entered his plea. ECF No. 12 at 16. He adds that he was not read his rights or informed that his breathalyzer results and answers to questions during the incident were inadmissible in the nonjudicial punishment proceeding. ECF No. 18 at 7-8. Had he known, he asserts, he would not have pleaded guilty to the alcohol-related charge. *Id.* at 8. Mr. Ferrari argues that the fact that his guilty plea was unintelligent "should have been identified during the [nonjudicial punishment] proceedings." ECF No. 12 at 16.

The corrections board, and the advisory opinion it incorporates, considered Mr. Ferrari's arguments and reasonably upheld Mr. Ferrari's guilty plea for the alcohol-related offense. *See* AR 4 (corrections board decision substantially concurring with the advisory opinion's conclusion); AR 36 (advisory opinion stating that the alcohol-related "incident was properly charged" at the

14

nonjudicial punishment proceeding); *see also* AR 335 (corrections board first decision finding the same). The record establishes that Mr. Ferrari pleaded guilty, that his plea was made without error, and that there was substantial admissible evidence to support the corrections board's decision, including the evidence supporting the nonjudicial punishment proceeding's and inquiry board's decisions.

Even if the government did not provide Mr. Ferrari with his blood-alcohol test results, that information was readily available in his personal medical records. AR 393. A party cannot claim ignorance of relevant facts or documents that it had access to and could have discovered earlier. *See Roberts v. United States*, 312 F. App'x 340, 342 (Fed. Cir. 2009) (rejecting the plaintiff's argument that he was not aware of relevant testimony when he could have reviewed his military service records, and when he provided no evidence that those records were unavailable to him earlier). Mr. Ferrari could have requested and accessed those records at any time. *See Requesting Medical Records*, Virginia Mason Franciscan Health, https://www.vmfh.org/patient-and-visitor-information/patient-information/requesting-medical-records (last visited Feb. 6, 2024) (website for the hospital where the blood alcohol concentration test was taken stating that patients "have the right to receive a copy of [their own] health information" and providing instructions for how to access medical records online). While Mr. Ferrari states that he did not discover the results until after his inquiry board proceeding, he has not provided any evidence or argument that he or his counsel were prevented from accessing that information earlier. *See* AR 60.

Mr. Ferrari's argument that no one told him that the breathalyzer test results and answers to questions were inadmissible at his nonjudicial punishment proceeding also fails. The corrections board concluded that Mr. Ferrari was properly charged with operating a vehicle while intoxicated and could have been charged even without that evidence. AR 4 (corrections board decision), 333 (corrections board's first decision); *see* AR 35-36 (advisory opinion noting that Mr. Ferrari raised "substantially the same argument" with regard to the alcohol-related charge as "he raised in his first [corrections board" application" and so his request on reconsideration should be denied).

The record provides substantial evidence independent of the breathalyzer test to support the alcohol-related charge. In the corrections board's first decision, the board also relied on witness testimony that Mr. Ferrari had a history of alcoholism and that he was shaking, sweating, and showing other signs of impairment at the time of the incident. AR 121-125; *see also* AR 4 (corrections board decision), 333, 339, 345-46 (corrections board's first decision). As the corrections board reasoned, a particular blood alcohol concentration is not an essential element of the offense Mr. Ferrari faced. *See* 10 U.S.C. § 911 (a)(2); (MCM) Part IV § 35.c(6) (2016); *see also* AR 333, 339, 345-46. Instead, the offense only requires evidence that the accused operated or physically controlled a vehicle while impaired by alcohol. Thus, the 0.044 percent blood-alcohol concentration result that the hospital collected hours after the incident (AR 129; ECF No. 12 at 9, 16), which Mr. Ferrari argues is admissible, further supports the conclusion that he was impaired by alcohol when he drove, notwithstanding that it was below the "legal limit" by the time that test was conducted (*see* AR 362). Throughout the nonjudicial punishment proceeding—and later when appealing the sexual-assault-related decision—Mr. Ferrari repeatedly and "readily admitted" to the drunk driving incident and took responsibility for drinking "in excess" during that time. AR 1293. Even if the breathalyzer results were excluded, there would still be sufficient independent evidence to support the correction board's decision. *See Williams v. United States*, 50 Fed. Cl. 91, 98 (2001), *aff'd*, 37 F. App'x 509 (Fed. Cir. 2002) (military corrections board's improper consideration of a

prior incident was harmless error because there was sufficient evidence otherwise to reach the same conclusion).

### 2. Mr. Ferrari was lawfully found guilty of the sexual-assault-related offenses in the nonjudicial punishment proceeding

In his petition for reconsideration, Mr. Ferrari provided the corrections board with new evidence of his contemporaneous text messages with his wife to challenge the nonjudicial punishment proceeding's finding that he was guilty of the sexual-assault-related offenses. AR 50, 54, 60-68, 70-71. Mr. Ferrari argues that the new text message evidence clearly establishes an alibi and raises questions about the complainant's credibility. He criticizes the corrections board for "merely dismiss[ing] this evidence as 'insufficient.'" ECF No. 12 at 16. Apart from the new evidence, Mr. Ferrari challenges the corrections board's decision by pointing out that the nonjudicial punishment proceeding and inquiry board reached different conclusions on the sexual-assault-related charges. ECF No. 18 at 9-10.

The corrections board considered Mr. Ferrari's additional text message evidence and reasonably determined that it did not give Mr. Ferrari an alibi sufficient to "exonerate" him or prove that the complainant lied. AR 3-4 (corrections board substantially concurring with the advisory opinion's analysis); *see* AR 33-35 (advisory opinion evaluating the text message evidence). Substantial evidence supports the corrections board's evaluation of the text messages, and Mr. Ferrari does not cite anything in the record to support his allegation that the corrections board "merely dismissed" the evidence. The discrepancy in the two forums' outcomes does not prove that the nonjudicial punishment was unlawful.

Mr. Ferrari argues that his text messages show that he was texting his wife at the time of the alleged assault. But, as the corrections board explained, the timing of the text messages does not mean that the incident could not have occurred in the same general timeframe, nor does it affect prior evaluations of the complainant's credibility, which was reviewed at length. AR 3-4, 33-35. Echoing the reasoning of a federal district court that evaluated the same new evidence, the corrections board reasoned that, while the text messages were relevant to the timing of the alleged incident, the specific timing was not important. AR 4. According to the corrections board, the officer presiding over the nonjudicial punishment proceeding extensively reviewed the complainant's credibility, including her recollection of the timing of the incident. AR 4, 35; *see, e.g.*, AR 489, 493, 494, 507-08. The timestamps on the messages corroborated that Mr. Ferrari had been texting his wife "during the general timeframe" of the incident, but that general window did not prove that the complainant's testimony was false. AR 4, 34-35. Thus, the corrections board reasonably concluded that the new text message evidence did not prove material error or injustice in Mr. Ferrari's prior proceedings.

Finally, the discrepancy between the outcomes of the nonjudicial punishment proceeding and the inquiry board proceeding does not show that the corrections board's decision was arbitrary and capricious. The first corrections board decision explained that a nonjudicial punishment proceeding and its outcomes "are separate and distinct from the [inquiry board's] findings and recommendations. The fact that members at the [inquiry board] voted that the evidence did not support a basis for separation with regard to [the sexual-assault-related charges] does not negate the [officer's] imposition of punishment" in the nonjudicial punishment proceeding. AR 333. Given

16

the substantial deference the court gives to the Navy in military pay cases, *see Riser*, 97 Fed. Cl. at 683-84; *Voge v. United States*, 844 F.2d 776, 779-80 (Fed. Cir. 1988), it is not this court's role to evaluate the merits of two Navy actions against one another when Mr. Ferrari has not overcome the presumption of regularity in those actions. *United States v. West*, 17 M.J. 627, 631 (N-M. C.M.R. 1983) ("[T]he presumption of regularity has consistently attached to properly executed service record entries … which reflect the imposition of nonjudicial punishment and convictions by court-martial."); *accord Richey v. United States*, 322 F.3d 1317, 1327 (Fed. Cir. 2003).

### III.     Conclusion

For the reasons stated above, the government's motion for judgment on the administrative record is **granted** and Mr. Ferrari's motion for judgment on the administrative record is **denied**. The Clerk of the Court shall enter judgment.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge